IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**ROSALIA and GERARDO CASTILLO**,
Individually and as Husband and Wife**,**

    **Plaintiffs,**

vs.                                                   No. 1:12-CV-00810 JAP/KBM

**THE UNITED STATES OF AMERICA**;
**TRACE, INC.**, a Foreign Corporation; **OVERSEAS
SERVICE CORPORATION**, a Foreign Corporation;
**TOP GUN, INC.**; a Foreign Corporation; **ACOSTA**,
an unknown entity; **PRIME TEAM SERVICES**,
a Foreign Corporation; **ANTONIO GONZALES**;
**FELICIA MEDINA**; **JANE & JOHN DOES 1-10**,
and **BLACK & WHITE CORPORATIONS 1-10**,

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

On October 25, 2012, Defendant Prime Team Services, Inc. ("Prime Team") filed a

MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND MEMORANDUM

BRIEF IN SUPPORT THEREOF (Doc. No. 14) ("Motion to Dismiss") under Fed. R. Civ. P.

12(b)(2), to which Plaintiffs have responded. After a careful reading of the briefs and the relevant

law, this Court concludes that Prime Team's Motion to Dismiss should be denied.

### BACKGROUND

This Federal Tort Claims Act ("FTCA") case arises out of an injury to Plaintiff Rosalia

Castillo that occurred on March 4, 2011, at the Kirtland Air Force Base Commissary

("Commissary"), near Albuquerque, New Mexico.[1] Mrs. Castillo, who is eighty years old, and

---

[1] The factual background is taken from Plaintiffs' FIRST AMENDED COMPLAINT FOR NEGLIGENCE AND PREMISES LIABILITY RESULTING IN PERSONAL INJURIES (Doc. No. 5) ("Amended Complaint").

her husband, Plaintiff Gerardo Castillo (collectively, "Plaintiffs"), were shopping that day at the Commissary. Plaintiffs were in the meat department when someone working at the Commissary struck Mrs. Castillo with a flat-bed dolly that was stacked so high with boxed grocery items that the dolly operator's line of sight was blocked. The dolly's impact caused Mrs. Castillo to fall to the ground and hit her head, which began to bleed onto the Commissary floor. Mrs. Castillo received immediate medical attention at a hospital, but suffered a permanent head injury and continues to have related medical conditions.

Plaintiffs allege that the United States, as the owner and operator of the Commissary, had contracted with outside companies to supply the Commissary and work there in various capacities including stocking shelves. Plaintiffs further allege that the dolly that hit Mrs. Castillo was operated by either Defendants Antonio Gonzalez or Felicia Medina, who were allegedly working at the Commissary at the time, or else by some other as-yet unidentified defendant. Gonzalez and Medina are alleged to be New Mexico residents and employees of Defendant Trace, Inc., and/or Defendant Overseas Service Corp., and/or Defendant Top Gun Services, Inc., and/or Defendant Prime Team Services, and/or Acosta, and/or unnamed and as-yet unidentified defendants. Plaintiffs claim that Prime Team may have contractual relationships with other Defendants or that it is horizontally or vertically integrated with other Defendants in a way that will be revealed through discovery. Finally, Plaintiffs allege that although Defendants Trace, Inc. and Top Gun Services, Inc. contracted with Defendants Gonzalez and Medina to perform stocking and shelving duties at the Commissary, Defendants Trace, Inc. and Top Gun Services, Inc. also contracted with Prime Team and/or Acosta to perform shelving and stocking services that were to be performed at the Commissary on the date of Plaintiffs' injuries.

On July 25, 2012, having filed an administrative claim with the United States under 28

U.S.C. § 2675(a) and having received a final determination denying the claim on February 13, 2012, Plaintiffs filed this lawsuit. The Amended Complaint, which Plaintiffs filed on September 3, 2012, includes counts against Prime Team of premises liability and vicarious liability, and two counts of negligent contracting, supervision, hiring, retention, control, and direction. In lieu of filing an answer to the Complaint, Prime Team filed its Motion to Dismiss on October 25, 2012. Plaintiffs filed a RESPONSE IN OPPOSITION TO DEFENDANT PRIME TEAM SERVICES' MOTION TO DISMISS (Doc. No. 22) ("Response") on November 12, 2012. Prime Team filed a REPLY IN SUPPORT OF MOTION TO DISMISS (Doc. No. 29) ("Reply").[2]

## DISCUSSION

**A.     Law Governing Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(2)**

*1. Burden of Proof*

It is the plaintiff's burden to prove that a court has personal jurisdiction over a defendant who contests that jurisdiction. *See AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008) (citing *Wenz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir. 1995)). However, this burden is "light" in the early stages of litigation. *AST Sports Sci., Inc.,* 514 F.3d at 1056 (citing *Doe v. Nat'l Med. Servs.,* 974 F.2d 143, 145 (10th Cir. 1992)). When a motion to dismiss for lack of personal jurisdiction is decided on the basis of written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdiction. *See Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1075 (10th Cir. 1995)."The plaintiff may make this

---

[2]The Court notes that Prime Team filed its Reply well after the deadline under Local Civil Rule of Procedure 7.4(a), and that Prime Team made no request for extension of the deadline or explanation of the delay. The Court will exercise its discretion to consider the arguments made in the Reply, but warns Prime Team that future filings must be made within the fourteen-day deadline or the Court will refuse to read or consider them.

prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998). The Court will also "accept as true any allegations in the complaint not contradicted by the defendant's affidavits, and resolve any factual disputes in the plaintiff's favor." *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1065 (10th Cir. 2007). Once the plaintiff makes this prima facie case, the defendant must then compellingly demonstrate "that the presence of some other considerations would render jurisdiction unreasonable." *OMI Holdings, Inc.*, 149 F.3d at 1091 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462 at 477 (1985)).

*2. Law on Exercising Personal Jurisdiction Over Foreign Defendants*

Before a federal court can exercise personal jurisdiction over a defendant in a federal question case, "the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000). Here, the applicable statute is the FTCA, which does not authorize nationwide service of process. However, Fed. R. Civ. P. 4(k)(1)(A) directs this Court to New Mexico's long-arm statute. That statute provides in relevant part:

> A. Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from: (1) the transaction of any business within this state; . . . (3) the commission of a tortious act within this state; . . . .

N.M.S.A. 1978, § 38-1-16 (1971). New Mexico courts equate section 38-1-16(A)'s requirements with the federal due process requirement of minimum contacts. *See, e.g., Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (citing *Tercero*, 132 N.M. 312, and noting that New Mexico's long-arm statute's reach is coextensive with the federal Due Process Clause); *F.D.I.C.*

4

*v. Hiatt*, 117 N.M. 461, 463, 872 P.2d 879, 881 (1994) ("Because we have interpreted the long-arm statute as extending our personal jurisdiction as far as constitutionally permissible, it is not necessary to determine whether [defendants] transacted business within New Mexico in any technical sense.") (internal citations omitted). As a result, if the Court determines in its analysis that Prime Team's acts are covered by the long-arm statute, the next step will be to consider whether the exercise of jurisdiction over Prime Team comports with federal due process standards. *See TH Agric. & Nutrition v. Ace Eur. Grp. Ltd.*, 488 F.3d 1282, 1287 (10th Cir. 2007) (proceeding directly to the constitutional analysis).

Federal due process limits are based on the concept of minimum contacts between the defendant and the forum state; this Court can only exercise jurisdiction over a foreign defendant if the defendant has such minimum contacts with New Mexico. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980). Those minimum contacts must in turn be enough so that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). Moreover, the defendant must have purposefully availed himself of the privilege of conducting activities within the forum state. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Among other things, the court examines whether the defendant purposefully initiated his activity in the state. *See Doe v. Roman Catholic Diocese of Boise, Inc.*, 1996-NMCA-057, 121 N.M. 738, 743, 918 P.2d 17, 22. This purposeful activity requirement ensures that a defendant will not be subject to personal jurisdiction solely as a result of random, fortuitous, or attenuated contacts with a given forum. *See id.*

**B.      Application of Rule 12(b)(2) Standard to This Case**

*1. The Parties' Arguments.*

Prime Team argues that it is a Michigan corporation that does no business in New Mexico,

so this Court lacks personal jurisdiction over it. *See* Motion to Dismiss at 2. Prime Team asserts that Plaintiffs "make only conclusory, generalized allegations that all Defendants, collectively, transacted business and committed torts in New Mexico, and received unspecified benefits as a result," and that these are an insufficient basis for personal jurisdiction. *Id.* at 3. Prime Team believes that New Mexico's long-arm statute cannot reach it because Prime Team has "no 'random, fortuitous or attenuated' contacts . . . with" New Mexico, nor contracts with or office or employees in the state to justify personal jurisdiction over Prime Team. *Id.* at 5 (quoting *Zavala v. El Paso Cnty. Hosp. Dist.*, 2007-NMCA-149 ¶ 11, 143 N.M. 36, 42, 172 P.3d 173, 179).

Prime Team's Motion to Dismiss is accompanied by an affidavit sworn by Prime Team's president, Joanna Boeckl. *See* AFFIDAVIT IN SUPPORT OF DEFENDANT, PRIME TEAM SERVICES, INC., A MICHIGAN CORPORATION, MOTION UNDER FRCP 12(b)(2) (Doc. No. 14-1) ("Boeckl Aff."). In this affidavit, Ms. Boeckl avers that Prime Team "contracts with individuals and companies on an independent contract basis, to provide stocking services which are directly under the supervision of and controlled by the government agency which owns the subject government facility." Boeckl Aff. at ¶ 3. Ms. Boeckl also notes that Prime Team "does not supervise or manage its independent contractors" in their work. *Id.* Ms. Boeckl represents that Prime Team "contracted with Acosta Sales, L.L.C., which is based in Jacksonville, Florida, to provide stocking services at the Kirtland Air Force Base Commissary which is located in New Mexico." *Id.* ¶ 4. Furthermore, under that agreement with Acosta, "[Prime Team] contracted with Felicia Medina on September 10, 2010 to provide stocking services at the Kirtland Air Force Base Commissary as an independent contractor." *Id.* ¶ 5. Ms. Boeckl nonetheless also maintains that Prime Team does no business in New Mexico and "does not utilize anyone in the State of New Mexico in any capacity other than as an independent contractor." *Id.* ¶ 7.

Plaintiffs respond by first explaining that prior to filing the present suit, they initiated a suit in state court, naming several of the current defendants but not Prime Team. *See* Response at 2. Plaintiffs note that the state court defendants provided interrogatory answers that revealed other relevant defendants, including Prime Team, and their possible involvement in causing Mrs. Castillo's injury. *See id.* at 3. The state court defendants moved to dismiss the state case after Plaintiffs filed the present federal suit; Plaintiffs did not oppose dismissal of the state case, and simply added the newly revealed defendants, including Prime Team, as defendants in this action. *See id.* As a basis for their opposition to Prime Team's Motion to Dismiss in this Court, Plaintiffs attach the state court interrogatory responses naming Prime Team, and also argue that Ms. Boeckl's affidavit itself affords a sufficient basis for personal jurisdiction because the affidavit acknowledges that Prime Team contracted with other named defendants to provide services in New Mexico. *See id.* at 6. Plaintiffs argue that their Amended Complaint "plead[ed] allegations against Prime Team establishing that it, along with . . . the other named defendants, had individual or collective roles in the loading and stocking of the shelves in the Commissary," and that failures in this stocking process led to Mrs. Castillo's injuries. *Id.* at 8. Plaintiffs contend that Ms. Boeckl's affidavit makes Prime Team's contacts with New Mexico more than conjectural, and adequate to subject Prime Team to personal jurisdiction in this Court. *See id.*

Prime Team replies that the state court interrogatory answers submitted by Plaintiffs in support of their response are inadmissible as evidence in this case because Prime Team was not a party to the state court action. *See* Reply at 1. Prime Team reiterates that its only contact with New Mexico was through two independent contractor relationships, and contends that these are not sufficient for the Court to exercise personal jurisdiction over Prime Team. *See id.* at 2 (citing *DeVenzeio v. Rucker, Clarkson & McCashin*, 121 N.M. 807, 918 P.3d 723 (1996)). Prime Team

7

also argues that Plaintiffs "may not stand idly by on their pleadings" and that the Response, like the Amended Complaint, makes only "conclusory and generalized allegations providing no evidence that jurisdiction is proper" in New Mexico. Reply at 2. Prime Team acknowledges that Plaintiffs may have alleged that an independent contractor working with Prime Team possibly caused Plaintiffs' damages, but Prime Team believes that actions by its independent contractors do not subject Prime Team to personal jurisdiction in New Mexico. *See id*. at 3.

*2. Plaintiffs Have Carried Their Burden in the Personal Jurisdiction Inquiry*

In Prime Team's view, because Plaintiffs provided no evidence with their Response other than the state court interrogatory answers by another party, Plaintiffs are "stand[ing] idly by on their pleadings" and have not met their burden. *Id.* at 2. Prime Team is correct that this Court cannot consider conjectural interrogatory responses, made by another party in a separate state court action, as evidence in the present case. But Prime Team has provided no affidavit or other material that contradicts Plaintiffs' assertion that this Court does have personal jurisdiction over Prime Team. Indeed, the affidavit submitted by Prime Team actually supports Plaintiffs' claim that the Court may exercise personal jurisdiction over Prime Team: the affidavit acknowledges Prime Team's contractual relationship with an individual who lives and works in New Mexico and who may have been involved in Mrs. Castillo's injury. Because Prime Team's Motion to Dismiss presents no credible evidence calling into question or conflicting with what Plaintiffs have claimed as the basis for personal jurisdiction, much less made a "compelling case" that jurisdiction is unreasonable, Plaintiffs need not come forward with additional evidence of their own in order for the Court to find that they have met their burden. *OMI Holdings, Inc.*, 149 F.3d at 1091 (quoting *Burger King*, 471 U.S. at 477).

*3. Prime Team's Acts Constitute Transacting Business Under N.M.S.A. 1978 § 38-1-16(A)(1)*

Because the FTCA does not provide for nationwide service, the Court looks instead to New Mexico's long-arm statute. *See* Fed. R. Civ. P. 4(k)(1)(A). The only applicable provision of the long-arm statute is the one covering business activity, since Plaintiffs do not allege that Prime Team itself was directly responsible for any torts. The long-arm statute defines transaction of business to include "the accomplishment of a series of similar acts for the purpose of realizing pecuniary benefit, or otherwise accomplishing an object, or doing a single act for such purpose with the intention of initiating a series of such acts." NMSA 1978, § 38-1-16(A)(1). Prime Team acknowledges that it "contracted with Acosta Military Sales, L.L.C. of Jacksonville, Florida to provide stocking services at the Kirtland Air Force Base Commissary which is located in New Mexico." Doc. No. 14-1 at ¶ 4. Furthermore, Prime Team "is in the business of providing staff, on an independent contractor basis, to provide stocking services which are directly under the supervision of and controlled by the government agency which owns the subject government facility." *Id.* at ¶ 3. Therefore, Prime Team sought to, and presumably continues to seek, to initiate separate legal acts through contracting the services of independent contractors for Prime Team's pecuniary benefit. As a result, the Court can conclude that Prime Team has conducted business in New Mexico for the purposes of NMSA 1978 § 38-1-16, and can proceed to assess whether exercising personal jurisdiction over Prime Team would comport with due process.

*4. Prime Team's Independent Contractor Relationships Satisfy Due Process*

The personal jurisdiction due process analysis has two steps: first, the defendant must be shown to have "minimum contacts" with the forum state, meaning that he "purposefully availed" himself of the benefits of the state's laws and "should reasonably anticipate being haled into court there." *Burger King*, 471 U.S. at 473-76; *see also Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618

F.3d 1153, 1159-60 (10th Cir. 2010) (applying *Burger King* standard). The minimum contacts standard may be met in two ways. First, a court may exercise specific jurisdiction if a defendant has "purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *AST Sports Sci., Inc.*, 514 F.3d at 1058 (quoting *Burger King*, 471 U.S. at 472). Alternatively, general jurisdiction may be possible if the defendant's contacts with the forum state, while unrelated to the alleged activities upon which the claims are based, are nonetheless "continuous and systematic." *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000). While agreements or single contracts alone are likely to be insufficient to establish minimum contacts, defendants who "'create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities.'" *TH Agric.*, 488 F.3d 1282, 1287-88 (10th Cir. 2007) (quoting *Burger King*, 471 U.S. at 473, 478).

The second step, if minimum contacts are present, is to ensure that exercising jurisdiction over the defendant "does not offend 'traditional notions of fair play and substantial justice.'" *World-Wide Volkswagen Corp.*, 444 U.S. at 292 (quoting *Int'l Shoe Co.*, 326 U.S. 310 at 316). The defendant bears the burden of "present[ing] a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1080 (10th Cir. 2008). Courts consider five factors in determining whether exercising personal jurisdiction would be fair:

> (1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states or foreign nations in furthering fundamental social policies.

*Id.* (brackets omitted); *see also OMI Holdings, Inc.*, 149 F.3d at 1095 (applying these factors in a

case involving a Canadian corporation). "[T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *TH Agric. & Nutrition, LLC*, 488 F.3d at 1292 (internal quotation marks and brackets omitted).

  *a.  Prime Team Has Minimum Contacts With New Mexico*

  Prime Team argues that an independent contractor relationship, such as the one Prime Team acknowledges that it has with Defendant Medina, is not sufficient as a basis for personal jurisdiction. *See* Reply at 3. Prime Team cites *Valdez v. Yates Petroleum Co.* for the proposition that Prime Team "is not responsible for any act or omission of an independent contractor." *See* Reply at 3 (citing 2007-NMCA-038, 141 N.M. 381, 155 P.3d 786, *cert. denied*, 2007-NMCERT-006, 142 N.M. 16, 162 P.3d 171). But while *Valdez* does confirm that "[t]he employer of an independent contractor is generally not liable for physical harm caused to another by a negligent act, or omission of the contractor or his servants," that extension of the principle of *respondeat superior* does not address the issue of personal jurisdiction over the independent contractor's employer, nor does *Valdez* address it. 2007-NMCA-038 at ¶ 17. In fact, as *Valdez* acknowledges, exceptions exist to the general no-liability principle for employers of independent contractors (in particular, for negligent hiring), so Prime Team potentially could be held liable. *See id.* at ¶ 18. Whether such exceptions might apply here is not presently at issue, however, but rather merely whether Prime Team's independent contractor relationships form the requisite minimum contacts for the Court to exercise personal jurisdiction. *Valdez* does not control that issue.

  Prime Team also cites *DeVenzeio v. Rucker, Clarkson & McCashin* as support for its argument that because Prime Team had "no specific relationship to the State of New Mexico," the Court does not have personal jurisdiction over it. Reply at 2 (citing 121 N.M. 807, 918 P.3d

11

723 (1996)). In *DeVenzeio*, the plaintiffs, who were New Mexico residents, hired a California attorney to represent them in California. *See DeVenzeio*, 121 N.M. at 808. The plaintiffs argued that the court could exercise personal jurisdiction over their suit against the California attorney because the alleged torts of fraud, deceit, and misrepresentation happened through the attorney's calls and letters to the plaintiffs. *See id.* at 809. The Court of Appeals disagreed, explaining that the attorney's "primary service" to plaintiffs was his legal work, and the communications were ancillary to that work; the dispute arose out of the legal services provided in California, so the plaintiffs' rights were injured there, not in New Mexico. *Id.* at 810-23. Prime Team does not elaborate on how *DeVenzeio*'s very different facts bear on the present case, and the Court can find little connection. The Amended Complaint in this case alleges, and Prime Team does not dispute, that Prime Team contracted with a New Mexico resident (Medina) who may have caused Plaintiffs' damages. Prime Team's contract was not ancillary to the independent contractor's employment in New Mexico; Plaintiffs' rights were certainly injured in New Mexico. *DeVenzeio* provides little guidance in this matter.

For their part, Plaintiffs have provided the Court with no case authority on the issue of personal jurisdiction over out-of-state employers of independent contractors. But the Court agrees with Plaintiffs that, the "independent contractor" label aside, the unknown factors present in the case, such as how Prime Team solicited its contract with Acosta and Medina and what the contract's terms were, "raise sufficient questions of fact, coupled with Plaintiffs' sufficiently well pled first amended complaint, to warrant a denial of Prime Team's motion to dismiss." Response at 9. Additionally, the conclusion that a company such as Prime Team may be subject to personal jurisdiction in a state where the company has hired independent contractors to do its work is in keeping with decisions by both the United States Supreme Court and the Tenth

Circuit. In *Quill Corp. v. North Dakota,* the Supreme Court held that due process allows a state to impose a use tax on an out-of-state corporation that solicits business in the state entirely by mail, with no physical presence in the forum at all. *See* 504 U.S. 298, 306-08 (1992). In its reasoning, the Supreme Court applied personal jurisdiction precedents because of the similarity of the due process requirements in the taxation context. *Quill* held that states can impose use taxes on out-of-state corporations "despite the fact that all of the seller's in-state solicitation was performed by independent contractors." 504 U.S. at 306 (citing *Scripto, Inc. v. Carson,* 362 U.S. 207 (1960)). By the same reasoning, a state may assert personal jurisdiction over an out-of-state corporation even though it employs independent contractors to conduct its business within the forum. Moreover, as the Tenth Circuit has noted, "it is well-established that a principal may be subject to the jurisdiction of the court because of the activities of its agent within the forum state." *Taylor v. Phelan*, 912 F.2d 429, 433 (10th Cir. 1990) (citing cases from numerous Courts of Appeal). The exact nature and scope of the relationship between Medina and Prime Team has yet to be established; however, Prime Team admits that it employed her as an independent contractor. *See* Boeckl Aff. at ¶ 6. Prime Team's only argument against personal jurisdiction appears to be that because Medina was an independent contractor, Prime Team cannot be found to have minimum contacts with New Mexico to give rise to personal jurisdiction. Based on the foregoing, this Court cannot agree. Both Plaintiffs' Amended Complaint and Prime Team's admission that it has an independent contractor relationship with at least one employee at the Commissary establish minimum contacts under at least a specific jurisdiction theory, because Plaintiffs' injuries arose from Prime Team's purposefully made contacts with New Mexico.

    *b. Requiring Prime Team to Litigate in New Mexico Will Not Offend Notions of Fair Play and Substantial Justice*

With minimum contacts established, Prime Team must make a "compelling case" that

13

jurisdiction would be unreasonable. *OMI Holdings, Inc.*, 149 F.3d at 1091. As noted above, courts consider five factors in assessing reasonableness. In this case, because neither Prime Team nor Plaintiffs have provided the Court with much evidence regarding Prime Team's independent contractor relationships connected to New Mexico, and because Prime Team does not even cite or make arguments concerning the five factors, the Court cannot apply the factors in detail. However, a preliminary analysis of the evidence that the Court does have indicates that the first three factors weigh in favor of a conclusion that exercising personal jurisdiction "would comport with traditional notions of fair play and substantial justice," while the other two factors do not appear to have any bearing on the evaluation. *Burger King*, 471 U.S. at 476 (quotation marks and citation omitted).

First, Prime Team will obviously undertake some burden to litigate in New Mexico, since Prime Team is a Michigan company with no New Mexico operations. But, as discussed, Prime Team has purposefully made contacts with New Mexico by hiring an independent contractor here. Because of that fact, the Court weighs the burden on Prime Team of litigating in New Mexico much less heavily than if its contacts were not purposeful or were nonexistent. Indeed, since Prime Team admittedly has business contacts in the state, litigating here can be viewed as not so much a burden as a cost of doing business. Second, New Mexico certainly has a strong interest in the case, as Plaintiffs are citizens of the state. Third, Plaintiffs obviously have a very strong "interest in receiving convenient and effectual relief," such as can be afforded to them in a court in this state. *Dudnikov*, 514 F.3d at 1080. The Court has too little information to properly consider the other two factors (considering the interest of the interstate judicial system in efficient resolution of controversies, and states' shared interest in furthering social policies). However, because the first three factors weigh in favor of exercising personal jurisdiction, the

Court believes that requiring Prime Team to appear in New Mexico would not offend notions of fair play and substantial justice.

Plaintiffs' Amended Complaint adequately alleges facts that, if true, would establish that Prime Team has transacted business in New Mexico within the meaning of the state's long-arm statute, the company has minimum contacts with the state, and requiring it to appear in New Mexico would not be unreasonable. Therefore, this Court may properly exercise personal jurisdiction over Prime Team, and the Motion to Dismiss will be denied.

IT IS ORDERED THAT:

(1) Defendant Prime Team Services, Inc.'s MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND MEMORANDUM BRIEF IN SUPPORT THEREOF (Doc. No. 14) is denied.

(2) Defendant Prime Team Services, Inc. must file an answer to Plaintiffs' FIRST AMENDED COMPLAINT FOR NEGLIGENCE AND PREMISES LIABILITY RESULTING IN PERSONAL INJURIES (Doc. No. 5) by March 15, 2013.

_____
SENIOR UNITED STATES DISTRICT JUDGE